UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL C.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 3:20-cv-19352
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Michael C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.**    **PROCEDURAL HISTORY**

On October 24, 2017, Plaintiff filed his application for benefits, alleging that he has been disabled since September 5, 2014. R. 66–67, 143–46. The application was denied initially and on

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

reconsideration. R. 75–79, 83–85. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 86–87. ALJ Kenneth Ayers held a hearing on October 28, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 28–58. In a decision dated December 4, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 5, 2014, Plaintiff's alleged disability onset date, through December 31, 2015, the date on which Plaintiff was last insured for DIB. R. 15–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 13, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On July 23, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[3] On August 3, 2021, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.     Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 50 years old on his alleged disability onset date and was 52 years old on the date on which he was last insured. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between September 4, 2014, his alleged disability onset date, and December 31, 2015, the date on which he was last insured. R. 17.

At step two, the ALJ found that Plaintiff's chronic heart failure, non-ischemic cardiomyopathy, and alcohol abuse were severe impairments. R. 17.  The ALJ also found that the following impairments were not severe: left bundle branch block (LBBB), atrial fibrillation, hypertension, chest wall hematoma, anemia, Vitamin D deficiency, lower extremity edema and acute kidney failure. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 18–22. The ALJ also relied on the testimony of the vocational expert to find that this RFC permitted the performance of Plaintiff's past relevant work as a mortgage clerk, automobile sales person, and loan clerk. R. 22. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from September 5, 2014, his alleged disability onset date, through December 31, 2015, the date on which he was last insured. *Id*.

Although his challenge to the ALJ's decision is difficult to discern, Plaintiff apparently disagrees with the ALJ's findings at step four; the Court presumes that Plaintiff seeks the

reversal of the decision and remand of the matter to the Acting Commissioner with directions for the grant of benefits or, alternatively, for further proceedings. *Plaintiff's Letter Brief,* ECF No. 14.[4] The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18.

## IV.   DISCUSSION

### A.   RFC

Plaintiff appears to argue that substantial evidence does not support the ALJ's RFC determination. *Plaintiff's Letter Brief*, ECF No. 14, PAGEID## 587–88. Plaintiff's argument is not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed

---

[4] Plaintiff advised in his most recent "brief" that he relies on the letter brief, ECF No. 10, previously submitted in accordance with Local Civil Rule 9.1 and attached thereto. *See id*.

8

by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with lifting 20 pounds occasionally and ten pounds frequently; carrying 20 pounds occasionally and ten pounds frequently; sitting for six hours, standing for six hours and walking for six hours and pushing and pulling as much as can lift and carry. The claimant can climb ramps and stairs occasionally but never climb ladders, ropes, or scaffolds. He can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant can never work at unprotected heights and he can never work around hazardous moving mechanical parts. He can work in humidity and wetness occasionally, in dust, odors, fumes and pulmonary irritants occasionally but he can never work in extreme cold or extreme heat.

R. 18. In making this determination, the ALJ detailed record evidence, including, *inter alia*, treatment notes reflecting that, on August 29, 2014, Plaintiff presented to emergency care with complaints of chest tightness and progressively worsening dyspnea with "mild" respiratory distress upon admission; record notes that reflected dyspnea, chronic heart failure, and acute kidney failure with atrial fibrillation, nonischemic cardiomyopathy, previous ventricular fibrillation arrest with dual chamber pacemaker placement, hypertension, alcohol abuse, and poor medical follow up; Plaintiff's reported noncompliance with medications and diagnosis of chronic heart failure, left bundle branch block, atrial fibrillation and cardiomyopathy, with an ejection fraction of 20-25% with systolic/diastolic dysfunction; Plaintiff's placement on ACE therapy with subsequent implantation of an automatic cardioverter/defibrillator, a procedure that

9

he tolerated well; and Plaintiff's September 11, 2014, discharge in stable condition and prescriptions for Carvedilol, Clonidine, and Furosemide. R. 20.

The ALJ specifically noted that the next medical record was dated October 2016, which was after the date on which Plaintiff was last insured. *Id*. That visit reflected that Plaintiff had presented to the emergency room with complaints of increased leg swelling and shortness of breath (for which he had sought treatment only a few weeks prior), but that he had denied chest pain, palpitations, or ICD shocks, and he had not had any dysuria or hematuria until that day. *Id*. Plaintiff reported that he had been seen in the nephrology clinic in 2014 but that he did not follow up since that time, explaining that he had just decided not to return to see his doctors. *Id*. An echocardiogram performed on the same day revealed normal left ventricular systolic function and mild pulmonary hypertension with an RSVP of 40 mmHG, which was sustained on an echocardiogram on July 28, 2017. *Id.* Plaintiff did not begin dialysis until November 2016, *i.e.*, more than eleven months after the date on which he was last insured. *Id*. During a cardiac follow-up on August 31, 2017, Plaintiff reported walking a mile a day in 20 to 25 minutes, and doing all the chores at home, including cooking, cleaning and vacuuming; he denied chest pain, dyspnea at rest or on exertion, orthopnea, and lower extremity swelling or claudication. *Id*. Plaintiff further reported that, overall, he was feeling well. *Id*. Plaintiff was diagnosed as suffering from a Class I cardiac impairment, equating to organic heart disease that exists but without limitation of physical activity; ordinary physical activity did not cause undue fatigue, palpitation, dyspnea (shortness of breath). *Id*. The ALJ also noted that Plaintiff had a history of alcohol abuse and that the record reflected that he continued to drink alcohol until he was diagnosed with chronic heart failure, but that he did not completely stop drinking until 2018. *Id*. The ALJ went on to explain that Plaintiff's conditions stabilized with medication and appropriate

treatment and explained why the medical evidence dated after the dated last insured of December 31, 2015, did not reasonably relate back to the relevant period:

> Overall, the record demonstrates that the claimant has been diagnosed with chronic heart failure, non-ischemic cardiomyopathy and alcohol abuse. Next, it must be pointed out that physical examinations prior to December 31, 2015, his date last insured, confirm that he suffers from acute and chronic conditions, which required hospitalization. However, these records also confirm that his conditions stabilized with medications and appropriate treatment.
>
> The balance of the medical evidence in this case consists of treating physician examinations and/or reports all performed subsequent to December 31, 2015, and none of this evidence reasonably relates back to the period prior to December 31, 2015.
>
> For example, Exhibit 3F covers the period from August 23, 2017 to August 31, 2017, and is not probative to the period in question on this claim. Exhibit 4F is largely duplicative of Exhibit 1F except it contains an earlier record from 2011, which is prior to the alleged onset date. Another history going back to 1986 is at Exhibit 10F. However, that is past medical history only and the actual examination was recent, in July 2019, and therefore any findings cannot be related back before the date last insured.

R. 20–21.

In crafting the RFC, the ALJ also explained why he discounted Plaintiff's subjective statements, as follows:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because although the record confirms that the claimant suffers from physical impairments with resulting limitations in functioning, the record fails to demonstrate that he was precluded from all work. However, I have considered the claimant's complaints that are supported by the medical evidence, and those complaints accurately reflect his residual functional capacity. Even though the claimant apparently had an episode of sudden cardiac death with resuscitation in 2011, he did not have the pacemaker implanted until 2014 as noted previously. The development of chronic kidney disease occurred sometimes after May 2015. While there are notations of dialysis prior to the date last insured, he did not start dialysis until November 2016. Cardiomyopathy is noted to be the root cause of his chronic kidney disease, rather than hypertension.

R. 21. The ALJ went on to explain why this evidence supported the RFC for a limited range of light work, as follows:

> The residual functional capacity accounts for the vocational limitations that would be placed upon the claimant based on his medically determinable impairments. Specifically, the claimant has provided evidence and testimony that he suffered from cardiac impairments in 2014. Based on the automatic cardioverter/defibrillator insertion and the claimant's complaints of shortness of breath in 2014 and being as deferential to the claimant's functioning as possible based on the limited records, I have placed the claimant at the light exertional level with postural and environmental respiratory limitations. Furthermore, while the 2014 admission records indicate edema, there are no records after that one admission in 2014 that indicate the existence or degree of any edema in the period under question. As such, I have not included any reduction in standing or walking in my residual functional capacity. Overall, there is nothing in the record that can contemporaneously indicate what limitation, if any, there was on lifting and carrying or standing or walking. With the light residual functional capacity, and given the claimant's age, education and prior work experience, there is no way that a decision on this claim can be favorable unless other vocational limitations such as 15% off task and/or excessive absences applies, however the record does not support such extreme limitations during the period in question.

R. 21–22. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429; *cf. Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion rendered nearly five years after the date last insured "lacked probative value" because it "shed no light" on the claimant's condition during the relevant period).

Plaintiff appears to challenge the RFC determination, arguing that he was unable to work during the period on which he was undergoing dialysis, *i.e.*, from October 2016 until his kidney transplant in 2020. *Plaintiff's Letter Brief*, ECF No. 14, at PAGEID# 587. Plaintiff's argument is not well taken. As a preliminary matter, Plaintiff provides no citations to the record to support this conclusory argument. *See id*. The Court will not hunt through the record or construct Plaintiff's arguments for him. *See Atkins v. Comm'r Soc. Sec.*, 810 F. App'x 122, 129 (3d Cir.

2020) ("'[J]udges are not like pigs, hunting for truffles buried in the record.'") (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)) (internal citation omitted)); *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("[T]his Court has frequently instructed parties that they bear the responsibility to comb the record and point the Court to the facts that support their arguments."). Notably, even if the Court were to piece together some supporting evidence, Plaintiff's argument in this regard misses the mark. The relevant time period in this case is September 5, 2014, Plaintiff's alleged disability onset date, through December 31, 2015, the date on which he was last insured for benefits. In other words, Plaintiff must prove that he was disabled while he was insured for benefits under 42 U.S.C. § 423(c). *Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 67 (3d Cir. 2015); *Hyler v. Colvin*, No. CIV.A. 12-4974, 2013 WL 3766817, at *9 (E.D. Pa. July 18, 2013) ("Because this case is an application for DIB, the plaintiff must prove that the onset of his disability occurred while plaintiff was insured under 42 U.S.C. § 423(c)."). Notably, "medical evidence generated after the date last insured is only relevant to the extent it is reasonably proximate in time or relates back to the period at issue." *Alston v. Astrue*, No. 10-cv-839, 2011 WL 4737605, at *3; *see also Beety-Monticelli*, 343 F. App'x at 746; *Porter v. Comm'r of Soc. Sec.*, No. CV 18-03744, 2019 WL 2590994, at *4–5 (D.N.J. June 25, 2019) (finding that the ALJ did not err in assigning little weight to a physician's opinion on the basis that the opinion "'was rendered more than a year after [Plaintiff's] date last insured and [it] does not indicate that it relates back' to the disability evaluation period") (citations omitted). In the present case, Plaintiff has failed to explain how his dialysis treatment, which reflects treatment after the date last insured, relates back to the relevant period and he has otherwise failed to explain how the ALJ erred in finding why these later medical records do not relate back to the relevant time period. *See Plaintiff's Letter Brief*, ECF

No. 14, at PAGEID#587. Accordingly, based on this record, the Court cannot conclude that the ALJ's finding that these later records did not relate back resulted in reversible error.

Plaintiff apparently further argues that his "severe" impairments at step two render him unable to work at step four. *Id*. Plaintiff's argument is not well taken. As with his earlier argument, Plaintiff's assertion is simply conclusory and devoid of any citation to the record. *See id*. In any event, the United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite his limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. Moreover, as noted earlier, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554. Accordingly, the Court cannot conclude that the ALJ committed reversible error where substantial evidence supports the ALJ's RFC determination, which accommodates all credible limitations flowing from Plaintiff's severe and non-severe impairments.

In another apparent attempt to challenge the ALJ's RFC, Plaintiff also contends that he "continues to have heart issues with his pacemaker. Any exertion or stress causes his pacemaker to read a flat line" and that his RFC is "so severe that he cannot work." *Plaintiff's Letter Brief*, ECF No. 14, at PAGEID# 587. Plaintiff's argument is not well taken. As with his prior

arguments, Plaintiff fails to cite to any record evidence to support this conclusory assertion. *See id*. Notably, Plaintiff has not pointed to—and the Court cannot locate—any medical source who provided any opinion of functional limitations. To the extent that Plaintiff relies on his own subjective statements of disability, the ALJ explained why those statements were discounted, a finding that Plaintiff does not challenge. Moreover, Plaintiff's assertion appears to relate to his current level of functioning, which exists years after the date on which he was last insured. *See id*. Plaintiff's unsupported conclusory argument therefore does not undermine the ALJ's RFC determination, which the Court has already explained is supported by substantial evidence.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record.

### C.  Past Relevant Work

Finally, Plaintiff appears to argue that the ALJ erred in finding that Plaintiff could perform his past relevant work "in the auto industry[.]" *Plaintiff's Letter Brief*, ECF No. 14, at PAGEID## 587–88. Plaintiff's argument is not well taken.

At step four, "[t]he claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428. "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). An ALJ must consider whether the claimant has the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In the present case, the ALJ determined that Plaintiff was capable of performing his past relevant work, identified by the vocational expert as a mortgage clerk, automobile sales person, and loan clerk, explaining as follows:

15

>According to the vocational expert, the claimant's past relevant work as a mortgage clerk (DOT#249.362-014) is sedentary and skilled. His past relevant work in automobile sales (DOT#273.353-010) is light and skilled. In regards to this job, the vocational expert stated since there is no exact DOT for a sales supervisor in the automotive context, the SVP might be a 7. His past relevant work as a loan clerk (DOT# 205.367-022) is sedentary and semi-skilled. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant was able to perform it as actually and generally performed. I note, that even if I had reduced the above light residual functional capacity to the sedentary residual functional capacity, with all the corresponding limitations, the vocational expert testified that all of the past work would still be performable, as such even with a sedentary residual functional capacity with non-exertional limitations, the claim would remain an Unfavorable at Step Four of the sequential evaluation and would never reach Step five.

R. 22; *see also* R. 51–57 (reflecting the vocational expert's hearing testimony in this regard).

Plaintiff challenges this finding, arguing that he "has no ability to work in the auto industry due to his heart issues. The walking and stress cause his heart rate to increase to such an extent that his pace-maker reads his heart as a flat line." *Plaintiff's Letter Brief*, ECF No. 14, at PAGEID## 587–88. Once again, Plaintiff's argument is conclusory and contains no record citations. *See id.*; *see also Atkins*, 810 F. App'x at 129; *Claxton*, 766 F.3d at 307. To the extent that Plaintiff relies on his subjective statements of disability, the ALJ explained why those statements were discounted, a finding that Plaintiff does not challenge. Moreover, the ALJ has already explained that, even if Plaintiff's RFC were reduced to sedentary, with all the corresponding additional limitations, the vocational expert had testified that all of Plaintiff's past work could still be performed by an individual with Plaintiff's vocational profile and that RFC. R. 22. In any event, even if the Court accepted for present purposes only that Plaintiff was unable to perform his past relevant work as an automobile sales person, two other occupations of past relevant work, *i.e.,* a mortgage clerk and a loan clerk, would still be available. *Id.*; *cf. Pierznik v. Comm'r Soc. Sec.*, No. 22-2369, 2023 WL 4014468, at *2 (3d Cir. June 15, 2023) ("[T]he ALJ need only establish that a claimant is capable of performing one job that exists in significant

16

numbers in the national economy."). While Plaintiff may challenge his ability to perform those two other jobs by asserting that he "has no ability to engage in nay [sic] other activity. Any stress and/or exertion, his pacemaker will simulate a flat-line[,]" *Plaintiff's Letter Brief*, ECF No. 14, at PAGEID# 588, this conclusory assertion, devoid of any citation to the record, is unavailing for reasons previously explained. In short, Plaintiff has not persuaded this Court that the ALJ erred in finding that Plaintiff was capable of performing his past relevant work.

## V.     CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 25, 2023                                  *s/Norah McCann King*
                                                     NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE